UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 3:13-cr-139 |
| v. | ) | Judge Aleta A. Trauger |
| | ) | |
| [2] FALLON SABLAN | ) | |

## MEMORANDUM AND ORDER

Defendant Fallon Sablan has filed a Motion to Dismiss the Indictment (Docket No. 82), to which the government filed a Response in opposition (Docket No. 89).

## BACKGROUND

On August 27, 2008, several members of the "Rolling 60's Crip" gang attempted to rob a residence in West Nashville while armed. According to victims, three black males approached their car, held them at gunpoint, and forced them into the residence. Once inside, the intruders engaged in a shootout with those inside the house. Two residents were shot and the robbers fled. It appears that, when the robbers fled, nothing was taken from the house.

In 2010, a confidential informant ("CW-1") confessed to his involvement and Sablan's involvement (among others) in the August 2008 attempted robbery. According to the government, this informant stated that Sablan had told the (would be) robbers that the West Nashville residence was a "drug house" containing large quantities of marijuana, which the robbers intended to steal and redistribute. In other words, the informant implicated Sablan in a conspiracy by Rolling 60's Crips to rob drug dealers. The government did not press charges against Sablan at that time.

In January 2013, jury selection began in *United States v. Conyers*, Case No. 3:09-cr-0240,

1

which involved alleged crimes against other Rolling 60's Crips gang members, including charges for Hobbs Act robberies, conspiracies to obtain and distribute narcotics, and the use of firearms in the commission of those crimes. The trial lasted until April 2, 2013. According to the government, during the course of the lengthy *Conyers* trial, the government gathered and re-evaluated information that corroborated CW-1's statements concerning his and Sablan's involvement in the August 2008 crime.[1] In March 2013 (during the pendency of the *Conyers* trial), investigators met with Sablan to question her about her involvement in that crime. Sablan denied any knowledge or involvement.[2]

In the summer of 2013 (after the *Conyers* trial), a second confidential informant ("CW-2") confessed that he and Sablan had played a role in the August 2008 attempted robbery. On August 7, 2013 – after CW-2's confession – the government filed an Indictment against Sablan and another alleged co-conspirator, charging Sablan with: (1) conspiracy to unlawfully obstruct, delay, and affect commerce and/or the movement of articles in commerce, by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count One) ("Hobbs Act Robbery"); (2) possession and/or use of a firearm in a Hobbs Act Robbery, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); (3) conspiracy to possess and distribute marijuana within 1,000 feet of a school zone, in violation of 21 U.S.C. §§ 846 and 850 (Count Three); and (4) possession

---

[1]The government's brief does not specify what additional corroborating information this was.

[2]Sablan's brief presents a different account of the interview. She claimed that the government met with her "regarding a matter unrelated to the instant allegations." (Docket No. 82.) According to Sablan's brief, "[a]fter the Government was not satisfied with her answers to their inquisition, they indicted her on the instant charges on August 7, 2013. (*Id.*) Notwithstanding her initial characterization of the March 2013 interview, she has not disputed the government's contention that she denied any involvement in the August 2008 crime during that interview.

and/or use of a firearm during and in furtherance of drug trafficking (Count Four), in violation of 18 U.S.C. § 924(c)(1)(A).[3] The crimes with which Sablan is charged are subject to a five-year statute of limitations. *See* 18 U.S.C. § 3282. The Indictment issued just 21 days before the five-year statute of limitations expired relative to the August 27, 2008 incident. On August 21, 2013, the grand jury issued a Superseding Indictment, which charged Sablan with the same crimes as the original Indictment. (Docket No. 16.)

In her Motion to Dismiss Indictment, Sablan argues that, under Fed. R. Crim. P. 48(b) and the Due Process Clause of the United States Constitution, the court should dismiss the Superseding Indictment in its entirety because the government unduly delayed bringing charges against her.

## ANALYSIS

**I.     Due Process Standard**

As an initial matter, Sablan appears to argue that Fed. R. Crim P. 48(b) and the Due Process Clause of the Fifth Amendment require separate analyses. Sablan cites no Sixth Circuit authority for this approach; indeed, the Sixth Circuit authority cited by both parties simply subsumes the Rule 48(b) analysis within the Due Process Clause analysis. *See, e.g.*, *United States v. Rogers*, 118 F.3d 466, 474-75 (6th Cir. 1997). The court will therefore do the same.

The Supreme Court recognizes that the Due Process Clause of the Fifth Amendment protects against oppressive pre-indictment delay. *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009) (citing *United States v. Marion*, 404 U.S. 307, 324-25 (1971), and *United States*

---

[3]Count Four alleges that Sablan had engaged in a conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846.

3

*v. Lovasco*, 431 U.S. 783, 789 (1977)). Nevertheless, "the acceptability of a pre-indictment delay is generally measured by the applicable statute of a limitations." *Shaffer*, 586 F.3d at 425 (quoting *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir. 1986)). Accordingly, a defendant alleging a Due Process violation premised on an indictment filed within the applicable statute of limitations faces a heavy burden. "A successful Due Process claim for pre-indictment delay requires that a defendant establish: (1) prejudice to his right to a fair trial; and (2) that the delay was intentionally caused by the government in order to gain a tactical advantage." *United States v. Wright*, 343 F.3d 849, 859 (6th Cir. 2003) (quoting *United States v. Brown*, 667 F.2d 566, 567 (6th Cir. 1982)). With respect to the prejudice element, "the defendant must show that the delay 'caused him *actual* prejudice in presenting his defense." *Schaffer*, 586 F.3d at 425 (emphasis in original) (quoting *United States v. Gouveia*, 467 U.S. 180, 192 (1984)). As the Sixth Circuit has noted, "[t]he standard for pre-indictment delay is nearly insurmountable, especially because proof of *actual* prejudice is always speculative." *Rogers*, 118 F.3d at 477 n.10 (emphasis in original). Here, Sablan has not even approached satisfying either element.

## II. No Showing of Actual Prejudice

As to the prejudice element, Sablan argues, without providing specifics or supporting evidence, that (1) her memory and that of other alibi witnesses may have faded, (2) cell phone and text records are no longer available, thereby preventing Sablan from showing that she was not in contact with the criminal informants and her co-defendants or otherwise provided information to them in August 2008; and (3) the victims no longer live at the residence where the incident occurred, making them difficult to locate.

As to the first alleged type of prejudice, under Supreme Court and Sixth Circuit

4

precedent, "the real possibility of prejudice inherent in any extended delay [] that memories will dim, witnesses become inaccessible, and evidence will be lost" is insufficient to establish actual prejudice. *Marion*, 404 U.S. at 325-26; *United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 2003) (stating that, as a matter of law, "loss of memory is an insufficient reason to establish prejudice"); *United States v. Duncan*, 763 F.2d 220, 222 (6th Cir. 1985). Moreover, Sablan's contention regarding the memories of potential witnesses is entirely speculative: she has provided no specifics concerning what witnesses (other than herself) whose memories have faded, what details may have been lost, and how that specifically will impact the trial. *See Wright*, 343 F.3d at 860.

As to the second alleged type of prejudice, Sablan's contentions are unsubstantiated. She has not established that she even had a cellphone in August 2008, nor has she provided proof that the cell phone and text records were actually lost; indeed, she has not shown that she has even attempted to obtain those records in the first place. Furthermore, as the government points out (and Sablan has not contested), Sablan has used six different cell phones corresponding to four cell phone numbers since February 2012, which the government suggests is consistent with intentionally using short-term pre-paid "burner" phones that are essentially untraceable in the first place. Finally, as the government also points out, it intends to rely on evidence of communications between Sablan and her alleged co-conspirators by means other than telecommunications. Thus, even if Sablan had shown that she had a particular cell phone in August 2008, that the phone was traceable and not a short-term "burner" phone, and that cell phone records and texts from that phone had actually been lost, she has not shown actual prejudice at this stage.

Sablan similarly fails to substantiate her contention that the timing of the Indictment has made it "extremely difficult" to find the alleged victims. Sablan has not identified what efforts (if any) she took to locate them. In the absence of any such showing, the court does not find actual prejudice. To the contrary, as the government points out, even a cursory public records search shows that (1) one witness appeared in the Davidson County General Sessions Court on September 30, 2013, maintains a searchable, public "Facebook" account, and is married to another witness; and (2) according to the Tennessee Department of Corrections, another witness is located at the Bledsoe County Correctional Complex.

### III.     No Showing of an Intentional Effort by the Government to Gain a Tactical Advantage

The delay resulting from investigative efforts "does not deprive [a defendant] of due process, even if his defense may have been somewhat prejudiced by the lapse of time." *Atisha*, 804 F.2d at 928 (citations omitted); *Lovasco*, 431 U.S. at 796 ("[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by lapse of time.") Here, even if Sablan had shown actual prejudice, Sablan has not shown that the delay was an intentional device by the government to gain tactical advantage. To the contrary, the government has presented a plausible explanation for choosing to indict Sablan in August 2013: evidence reviewed in its additional investigation during the early 2013 *Conyers* trial corroborated CW-1's information concerning Sablan, and CW-2's confession to the government in the summer of 2013 provided further corroboration concerning Sablan's involvement. This sequence of events indicates that the government refrained from prosecuting Sablan until the government gathered additional corroborating information from its ongoing investigation, which was its prerogative.

Therefore, for the reasons stated herein, Sablan's Motion to Dismiss the Indictment (Docket No. 82) is hereby **DENIED**.

It is so **ORDERED**.

Enter this 10th day of April 2014.

_____
ALETA A. TRAUGER
United States District Judge