# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 3:13-cr-139 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| [2] FALLON SABLAN ) | |

## MEMORANDUM AND ORDER

Defendant Fallon Sablan has filed a "Motion to Dismiss Counts One and Five and to Require Mandatory Election of Offenses Between Counts Two and Four and Counts Six and Eight" (Docket No. 83),[1] to which the government has filed a Response in opposition (Docket No. 90). For the reasons stated herein, the motion will be denied.

## BACKGROUND

On August 27, 2008, several members of the "Rolling 60's Crip" gang attempted to rob a residence in West Nashville while armed. According to victims, three black males approached their car, held them at gunpoint, and forced them into the residence. Once inside, the intruders engaged in a shootout with those inside the house. Two residents were shot and the robbers fled. It appears that, when the robbers fled, nothing was taken from the house. Defendant Sablan, who allegedly was a member of the Rolling 60's Crips at the time, allegedly orchestrated this attempted robbery by informing the (would be) robbers that the residence contained a large quantity of marijuana that the alleged conspirators, including Sablan, intended to steal and redistribute. Sablan allegedly provided her fellow gang members the address of, and directions

---

[1] The Superseding Indictment contains only four counts. The court construes Sablan as seeking dismissal of Count One and an election of offenses as between Counts Two and Four.

1

to, that residence.[2]

The Superseding Indictment (Docket No. 16) charges Sablan with four crimes: (1) conspiracy to unlawfully obstruct, delay, and affect commerce and/or the movement of articles in commerce, by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count One) ("Hobbs Act Robbery"); (2) possession and/or use of a firearm in a Hobbs Act Robbery, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); (3) conspiracy to possess and distribute marijuana within 1,000 feet of a school zone, in violation of 21 U.S.C. §§ 846 and 850 (Count Three); and (4) possession and/or use of a firearm during and in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four).[3]

In the instant motion, Sablan argues that Count One should be dismissed because the alleged violation had no impact on interstate commerce, thereby depriving the government of jurisdiction to prosecute that crime. Sablan also argues that the two § 924(c) charges impermissibly seek to punish Sablan for the same conduct, raising Double Jeopardy concerns.

## ANALYSIS

**I.** *Hobbs* **Act Charge**

Under the Hobbs Act:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title and imprisoned not more than twenty years, or both.

---

[2](*See* Docket No. 44, Transcript of September 3, 2013 bond hearing, at 8:24-9:12.)

[3]Count Four alleges that Sablan had engaged in a conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846.

2

Accordingly, to prevail on a Hobbs Act charge, "the government must prove two elements: (1) interference with interstate commerce (2) in the course of a substantive criminal act." *United States v. Ostrander*, 411 F.3d 684, 691 (6th Cir. 2005); *United States v. McClendon*, 362 F. App'x 475, 480 (6th Cir. 2010).[4]

With respect to the interstate commerce element, the Hobbs Act defines "commerce" broadly to include "commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the State through any place outside such State; and *all other commerce over which the United States has jurisdiction*." *Id.* § 1951(b)(3) (emphasis added). As the Supreme Court explained in *Stirone v. United States*, 361 U.S. 212 (1960):

> Th[e] Act speaks in broad language, manifesting a purpose to use all of the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence. The Act outlaws such interference "in any way or degree."

*Id.* at 215; *see also United States v. Watkins*, 509 F.3d 277, 281 (6th Cir. 2007).

Where the victim of a robbery or violence is a business entity, the effect on interstate commerce need only be *de minimis*. *United States v. Smith*, 182 F.3d 452, 456 (6th Cir. 1999); *United States v. Peete*, 919 F.2d 1168, 1174 (6th Cir. 1990). "The *de minimis* standard is based on the rationale that the Hobbs Act regulates activities that, when aggregated, have a substantial effect on interstate commerce." *United States v. Chandler*, 486 F. App'x 525, 531 (6th Cir. 2012) (citing *United States v. Davis*, 473 F.3d 680, 683 (6th Cir. 2007)). "Proof of a *de minimis*

---

[4]The *Ostrander* citation contains a published opinion addressing certain issues raised in the appeal and an unpublished appendix addressing the remaining issues. The portion relating to commerce under the Hobbs Act is contained in the unpublished appendix.

3

effect on interstate commerce, then, does not require the government to prove that a Hobbs Act robbery had an actual effect on interstate commerce, but only that there was a 'realistic probability' of such an effect." *United States v. Watkins*, 509 F.3d at 281 (citing *Peete*, 919 F.2d at 1174).

Furthermore, "illegal commerce counts as commerce for Hobbs Act purposes." *United States v. Cecil*, 615 F.3d 678, 691 (6th Cir. 2010) (quoting *Ostrander*, 411 F.3d at 692). Therefore, a defendant can violate the Hobbs Act by robbing a drug dealer, for example. *See Cecil*, 615 F.3d at 691-92; *Ostrander*, 411 F.3d at 691.

Here, Sablan argues that the intended targets of the robbery were individuals, not businesses, thereby falling outside of the government's Commerce Clause jurisdiction. Sablan also argues that "there is no evidence or information to even speculate that the marijuana was manufactured anywhere other than Tennessee," which is "known for the production of marijuana." Sablan argues that, absent a showing that the marijuana at issue was manufactured outside of Tennessee, the indictment must be dismissed because "[m]arijuana grown in Tennessee would not have even the smallest effect on commerce." In response, the government argues that, because the target of the alleged conspiracy was to obtain illegal narcotics, the conspiracy *per se* affected interstate commerce within the meaning of the Commerce Clause (and by extension the Hobbs Act). The government also argues that it is inappropriate for the court to find that it lacks jurisdiction over the Hobbs Act claim as alleged in the indictment, because the indictment allegations are sufficient and the real issue is whether the government will have carried its burden at trial, an issue that is not appropriately addressed in a motion to dismiss the indictment.

The court agrees with the government that the indictment itself adequately alleges the elements of a Hobbs Act offense, including the commerce element. Sablan is essentially arguing about whether the government will be able to meet its burden to *prove* that element at trial, which is a different inquiry than the sufficiency of the Superseding Indictment itself. Accordingly, as it is related to Count One, the court will deny the motion on that basis. *See United States v. Kelley*, 2008 WL 5517559, at *14 (E.D. Tenn. Oct. 24, 2008) (denying motion to dismiss indictment charging Hobbs Act violation, where defendant asserted that there was "no proof that even if completed the transaction affected interstate commerce," because defendant's argument "does not address the sufficiency of the Superseding Indictment, but rather the proof to be adduced at trial"); *United States v. Lewis*, 2011 WL 4064520, at *1 (S.D. Ohio Sept. 13, 2011) (finding, under similar circumstances, that motion for judgment of acquittal under Fed. R. Civ. P. 29 was appropriate mechanism for addressing sufficiency of government's evidence with respect to interstate commerce element).[5]

---

[5]The government has indicated that, as with Hobbs Act robberies relating to cocaine, the attempted robbery of marijuana and associated proceeds here necessarily affected (or would have affected) interstate commerce under the Hobbs Act. In *Cecil* and *Ostrander*, the Sixth Circuit found that the interstate commerce element was satisfied in cases involving robberies of drug dealers, where the government had presented evidence that the cocaine at issue arrived from out-of-state – as it must have because cocaine is not produced in Tennessee. By contrast, the Sixth Circuit has not squarely addressed what the government's default burden is with respect to robberies of marijuana, which can be produced in Tennessee.

In *Gonzales v. Raich*, 545 U.S. 1 (2005), the Supreme Court found that Congress had power under the Commerce Clause to regulate purely intrastate marijuana growth and distribution under the Controlled Substances Act. Subsequent to *Raich*, in a case involving the robbery of a legitimate business enterprise, the Sixth Circuit reaffirmed that the *de minimis* standard still applies to Hobbs Act crimes relating to the robbery of a business. *See United States v. Davis*, 473 F.3d 680, 682-83 (6th Cir. 2007). However, it appears that only the Second Circuit has addressed the implications of *Raich* on Hobbs Act prosecutions in which the defendant had robbed or had attempted to rob a marijuana dealer, as opposed to a cocaine dealer.

## II. **Double Jeopardy Challenge**

"The Double Jeopardy Clause of the Fifth Amendment prohibits multiple punishments for the same criminal act or transaction." *United States v. Graham*, 275 F.3d 490, 519-20 (6th Cir. 2001). "In *Blockburger v. United States*, 284 U.S. 299 [] (1932), the Supreme Court stated the test to be applied to determine whether a defendant faces double jeopardy: the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Christian v. Wellington*, 739 F.3d 294, 298 (6th Cir. 2014). "The *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." *Id.* (citing *Illinois v. Vitale*, 447 U.S. 410, 416 (2014)); *see also United States v. Ehle*, 640 F.3d 689, 696 (6th Cir. 2011) (stating that *Blockburger* "requires that the statutory provisions' required elements be viewed in the abstract.")

"In this Circuit, it is well-settled that because of the Double Jeopardy Clause's

---

*See United States v. Needham*, 604 F.3d 673 (2d Cir. 2010). In most relevant part, the *Needham* court split 2-1 as to whether the jury should be charged that "[t]he United States' jurisdiction over commerce encompasses marijuana that is grown, processed, and sold entirely within a single state." The issue addressed by the majority and dissent in *Needham* has not been addressed by the Sixth Circuit after *Raich*.

Here, if the government presents proof at trial that otherwise establishes a *de minimis* effect or intended effect of the robbery on interstate commerce, the issue addressed in *Needham* would be essentially metaphysical. Indeed, in contrast to Sablan's contention, "[t]he Hobbs Act does not actually require a showing that certain goods traveled in interstate commerce." *Cecil*, 615 F.3d at 691 n.9. On the other hand, if the government simply intends to rely on a presumption or *per se* rule that a robbery involving marijuana affects interstate commerce under the Hobbs Act, the issue addressed in *Needham* would be more pertinent. The court expects to address this issue with the parties in advance of trial.

prohibition on multiple punishments a court may not impose more than one sentence upon a defendant for violations of section 924(c) which relate to but one predicate offense." *Graham*, 275 F.3d at 519 (brackets omitted) (quoting *United States v. Sims*, 975 F.2d 1225, 1233 (6th Cir. 1992)). However, the Sixth Circuit "ha[s] upheld convictions and sentences under 18 U.S.C. § 924(c)(1) so long as such convictions are based on separate predicate acts." *Graham*, 275 F.3d at 520. Thus, "[i]t is now firmly established that the imposition of separate consecutive sentences for multiple § 924(c) violations occurring during the same criminal episode are lawful." *United States v. Burnette*, 170 F.3d 567, 572 (6th Cir. 1999).

Here, Sablan argues that Counts Two and Four are "multiplicitous" and, therefore, the government must elect to proceed on just one of the two charges.[6] Sablan argues that, absent dismissal of one of the firearms charges, she faces a potential mandatory minimum of sentence of 35 years in prison if she is convicted on both Count Two and Count Four.[7] Sablan also argues that proof of possession of a gun for the robbery will be the same as proof of possession of a gun with intent to possess and distribute drugs. Notably, Sablan acknowledges that the "Blockberger test's low bar of 'different elements' allows the government to charge Ms. Sablan with the Hobbs Act robbery and the conspiracy to possess drugs charges for the same conduct." (Docket

---

[6]The Sixth Circuit has referred to allegedly redundant offenses alternatively as "multiplicative" or "multiplicitous." *Compare United States v. Throneburg*, 921 F.2d 654, 656-67 (6th Cir. 1990) (referring to "multiplicitous" counts) *with United States v. Thornsbury*, 1990 WL 86471, at *1 (referrring to "multiplicative" counts). In published Sixth Circuit cases, the prevailing term is "multiplicitous."

[7]Under § 924(c), conviction of a first offense carries a mandatory minimum sentence of 10 years (§ 924(c)(1)(A)(iii)), conviction on a second offense carries a mandatory minimum sentence of 25 years (§ 924(c)(1)(C)(i)), and both convictions must run consecutively (§ 924(c)(1)(D)(ii)).

7

No. 84 at 9 (lack of italics in original).) However, without citation to legal authority, Sablan argues that "a line must be drawn somewhere with respect to multiple charges for the same conduct." (*Id.*)

As the government points out, Counts Two and Four are predicated on distinct predicate offenses that require proof of different elements. The underlying Hobbs Act charge, which is the predicate offense for the Count Two firearm offense, requires proof of (1) interference with interstate commerce (2) in the course of a substantive criminal act – here, robbery. *See Ostrander*, 411 F.3d at 691. As defined in the Hobbs Act, "robbery" is "the unlawful taking or obtaining of personal property from the person . . . against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession . . . ."

By contrast, the underlying § 846 charge for conspiracy to possess with intent to distribute, which serves as the predicate offense for the Count Four firearm offense, requires proof that Sablan conspired to violate federal narcotics laws. "The essential elements of a conspiracy to violate 21 U.S.C. § 841(a)(1) are that the defendants entered into an agreement to possess with intent to distribute marijuana, that the defendants do so willingly, and that one of the conspirators knowingly committed at least one overt act in furtherance of the conspiracy." *United States v. Hitow*, 889 F.2d 1573, 1577 (6th Cir. 1989).

In sum, Counts Two and Four relate to different predicate offenses, and each count requires proof of elements that the other offense does not. Therefore, based on the manner in which the government framed the charges in the indictment, the court finds no grounds to dismiss the indictment pursuant to the Double Jeopardy Clause at this stage.

Of course, the government's refusal to dismiss the indictment does not preclude Sablan from raising the issue again at the close of the proof at trial, in a post-verdict motion to vacate her conviction, or at sentencing. *See United States v. Throneburg*, 921 F.2d 654, 656-67 (6th Cir. 1990) (conviction on multiplicitous count should be vacated, unless there is prejudice to the defendant); *Ehle*, 640 F.3d at 699 (reversing and remanding to district court with instructions to vacate multiplicitous conviction); *United States v. McCafferty*, 482 F. App'x 117, 126 (6th Cir. 2012) ("[T]he proper remedy for multiplicitous counts may include allowing the jury to consider all counts that are reasonably supported by the evidence and addressing any multiple-punishment issues at sentencing by merging overlapping convictions.") (citing *Ball v. United States*, 470 U.S. 856, 864-65 (1985)).

## CONCLUSION

For the reasons stated herein, Sablan's Partial Motion to Dismiss (Docket No. 83) is hereby **DENIED.**

Enter this 14th day of April 2014.

ALETA A. TRAUGER
United States District